Bryan Quesenberry
197 East 100 North, Suite A
Payson, UT 84651
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*
Pro Se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. BRYAN QUESENBERRY,<br><br>Plaintiff,<br><br>vs.<br><br>ALARM MANAGEMENT, II, LLC; ANTONIO'S OF DEARBORN HTS, INC.; CHARLIE MARTIN; CLEAN PRO, INC.; CMAI INDUSTRIES, INC.; DUNCO HOLDING CO., LLC; EFBQF HOSPITALITY, LLC; EXCYL INCORPORATED; H AND G ENTERPRISES, LLC; MERCY PLUS HEALTHCARE SERVICES, LLC; NORTHSTAR PAINTING; THE LEARNING TREE CHILD CARE CENTER, INC.; and WILLIAM HAHN,<br><br>Defendants. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal)**<br>**(DO NOT PLACE ON PACER)**<br><br>**JURY TRIAL DEMANDED**<br><br>Civil Action No. |

Plaintiff-Relator Bryan Quesenberry, acting *pro se*, on behalf of the United States of America (the "Government" or the "Federal Government") and against the above-named Defendants, alleges based upon personal knowledge, relevant documents, information, and belief, as follows.

## INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendants and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq*. **("the FCA")**.

2. This action seeks to recover millions of federal dollars wrongfully loaned to Defendants through the Federal Government's Payroll Protection Program **("PPP")**. The PPP provides a pathway to borrowers for forgiveness of these loans.

3. Pursuant to the PPP, the Federal Government has spent billions of dollars in stimulus funding, as well as other federal funding, to support and aid legitimate businesses through the coronavirus pandemic.

4. This action alleges that certain Defendants applied multiple times for PPP funds and received PPP funds multiple times despite the PPP application and rules prohibiting applicants from receiving PPP funds more than once.

5. The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

6. The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or

using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each such claim, **plus three times the amount of the damages** sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

7. In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest…" 31 U.S.C. § 3729(b)(2).

8. The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendants during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

9. Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## PARTIES

10. Plaintiff/Relator Bryan Quesenberry **("Relator")** is a resident of Utah. He brings this action on behalf of the United States of America, the real party in interest.

11. Defendant Alarm Management II, LLC **("Alarm Management")** is a Michigan entity doing business in Grand Blanc, MI. Alarm Management applied for PPP funds twice, and

was approved for $150,000 - $350,000 on 4/15/2020 and approved for another $350,000 – $1 million on 4/15/2020. Upon information and belief, this entity received these funds.

12. Defendant Antonio's of Dearborn HTS, Inc. **("Antonio's")** is a Michigan entity doing business in Dearborn Heights, MI. Antonio's applied for PPP funds twice, and was approved for $150,000 - $350,000 on 5/3/2020 and approved for another $150,000 - $350,000 on 5/7/2020. Upon information and belief, this entity received these funds.

13. Defendant Charlie Martin **("Martin")** is a Michigan entity doing business in Ypsilanti, MI. Martin applied for PPP funds <u>three times</u>: once for $150,000 – $350,000 on 5/3/2020, a second time for $350,000 – $1 million on 5/3/2020, and a third time for another $2 – 5 million on 5/3/2020. Upon information and belief, this entity received these funds.

14. Defendant Clean Pro, Inc. **("Clean Pro")** is a Michigan entity doing business in Keego Harbor, MI. Clean Pro applied for PPP funds twice, and was approved for $150,000 - $350,000 on 6/29/2020 and approved for another $150,000 - $350,000 on 6/30/2020. Upon information and belief, this entity received these funds.

15. Defendant CMAI Industries, Inc. **("CMAI")** is a Michigan entity doing business in Plymouth, MI. CMAI applied for PPP funds twice, and was approved for $150,000 - $350,000 on 6/26/2020 and approved for another $150,000 - $350,000 on 6/30/2020. Upon information and belief, this entity received these funds.

16. Defendant Dunco Holding Co., LLC **("Dunco")** is a Michigan entity doing business in Harper Woods and/or Detriot, MI. Dunco applied for PPP funds twice, and was approved for $150,000 - $350,000 on 4/27/2020 and approved for another $150,000 - $350,000 on 4/30/2020. Upon information and belief, this entity received these funds.

17. Defendant EFBQF Hospitality, LLC **("EFBQF")** is a Michigan entity doing business in Birmingham, MI. EFBQF applied for PPP funds twice, and was approved for

$150,000 - $350,000 on 4/15/2020 and approved for another $150,000 - $350,000 on 4/27/2020. Upon information and belief, this entity received these funds.

18. Defendant Excyl Incorporated **("Excyl")** is a Michigan entity doing business in Troy, MI. Excyl applied for PPP funds twice, and was approved for $150,000 - $350,000 on 5/1/2020 and approved for another $350,000 - $ 1 million on 5/3/2020. Upon information and belief, this entity received these funds.

19. Defendant H and G Enterprises, LLC **("H and G")** is a Michigan entity doing business in Ypsilanti, MI. H and G applied for PPP funds twice, and was approved for $150,000 - $350,000 on 6/23/2020 and approved for another $150,000 - $350,000 on 6/28/2020. Upon information and belief, this entity received these funds.

20. Defendant Mercy Plus Healthcare Services, LLC **("Mercy")** is a Michigan entity doing business in Flushing, MI. Mercy applied for PPP funds twice, and was approved for $350,000 - $1 million on 4/14/2020 and approved for another $1 – 2 million on 5/1/2020. Upon information and belief, this entity received these funds.

21. Defendant Northstar Painting **("Northstar")** is a Michigan entity doing business in Birmingham, MI. Northstar applied for PPP funds twice, and was approved for $150,000 - $350,000 on 4/30/2020 and approved for another $150,000 - $350,000 on 5/3/2020. Upon information and belief, this entity received these funds.

22. Defendant The Learning Tree Child Care Center, Inc. **("Learning Tree")** is a Michigan entity doing business in Farmington, MI. Learning Tree applied for PPP funds twice, and was approved for $150,000 - $350,000 on 4/14/2020 and approved for another $150,000 - $350,000 on 4/14/2020. Upon information and belief, this entity received these funds.

23. Defendant William Hahn **("Hahn")** is a Michigan entity doing business in Pontiac and/or Royal Oak, MI. Hahn applied for PPP funds twice, and was approved for

$150,000 - $350,000 on 5/3/2020 and approved for another $150,000 - $350,000 on 5/3/2020. Upon information and belief, this entity received these funds.

24. According to the PPP application discussed below, owners of Defendants include partners or members owning 20% or more equity in the company. Upon information and belief, and after further discovery in this matter, Relator anticipates he will need to amend this Complaint to add in such owners or representatives as co-defendants if they were complicit in the fraudulent misrepresentations listed herein.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, to Realtor's knowledge there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

26. Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Plaintiff researched and discovered through a records request the pertinent dates of formation and other related entity information of each Defendant.

27. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants are Michigan entities.

28. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendants can be found in and/or transacted

business in this district, and because violations of 31 U.S.C. §§ 3729 *et seq*. alleged herein occurred within this district. At all times relevant to this Complaint, Defendants regularly conducted substantial business within this district.

## THE PAYCHECK PROTECTION PROGRAM

29. Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act **("CARES Act")**. Section 1102 contains a new program called the Paycheck Protection Program **("PPP")** and is party of the U.S. Small Business Administration's **("SBA")** 7(a) Loan Program. These two sections are intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020.

30. Due to the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the coronavirus.

31. The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

32. Section 1102 of the Act temporarily permits SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

33. The CARES Act was intended to provide relief to America's small businesses expeditiously.

34. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified

documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders are held harmless for borrowers' failures to comply with PPP rules.

35. Defendants had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

36. In general, Defendants calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence is the United States. Annual employee salaries are capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

37. One certification on the Application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

38. Each Defendant certified on its PPP application that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the ***Applicant has not and will not receive another loan under the Paycheck Protection Program***." (Emphasis added)

39. Defendants also "further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

40. Finally, all Defendants certify that they "understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## **ALLEGATIONS**

41. According to the Small Business Administration (SBA), Michigan-based entities who applied for and received at least $150,000 in PPP funds totaled approximately 19,971.

42. Plaintiff reviewed and analyzed data from the SBA to identify Michigan-based entities who applied more than once for PPP funds. Plaintiff then cross-checked that data with the Michigan Secretary of State's website to confirm various data points and information and fully identify entities who unlawfully applied more than once for PPP funds. The result was the above-named Defendants for this Eastern District of Michigan.

43. Defendants each certified on their PPP applications that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

44. Defendants thus made material misrepresentations on their applications for PPP funds, knowing lenders and the Federal Government would rely on said representations in paying PPP funds to Defendants.

45. Relator reserves the right to amend this Complaint and expand these allegations upon review of the actual applications and supporting documentation submitted by Defendants.

## **False Claims Act**

## **31 U.S.C. § 3729(a)(1)(A)-(B)**

46. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

47. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

48. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

49. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

50. Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented to third party lending institutions. Relator does not have access to the records of all such false or fraudulent statements or claims.

51. Lenders, acting on behalf of the Federal Government, were guaranteed 100% of the PPP loans. Said lenders were unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants. Said lenders paid the claims that would not be paid but for Defendants' illegal conduct.

52. By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

53. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation arising from Defendants' unlawful conduct alleged herein.

**PRAYER**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against each Defendant as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages the United Sates has sustained because of Defendant's actions,

plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);
3. That Relator be awarded all costs of this action, including attorney's fees and expenses; and
4. That Relator recover such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: 9/17/2020 Respectfully submitted,

/s/ Bryan Quesenberry
Bryan Quesenberry
*Plaintiff/Relator*